[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10769
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cv-01589-WFJ-AEP

MICHAEL S. KNEZEVICH,

Plaintiff - Appellant,

versus

WILLIAM L. CARTER,
et al.,

Defendants,

UNITED STATES OF AMERICA,
for William L. Carter and Wendy J.
Relue,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 24, 2020)

Before JILL PRYOR, BRANCH and TJOFLAT, Circuit Judges.

PER CURIAM:

Michael Knezevich, proceeding *pro se*, appeals the district court's denial of his motion to remand his civil action to state court and dismissal of his amended complaint for lack of jurisdiction and failure to state a claim. The complaint raised claims of defamation, intentional infliction of emotional distress, breach of fiduciary duty, and tortious interference with contract or business relations under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Knezevich argues that the district court erred by denying his motion to remand because: (1) the United States Attorney incorrectly certified that defendants Wendy Relue and William Carter were acting within the scope of their employment during the events alleged in the complaint, (2) the government failed to promptly file its notice of removal in state court, and (3) the state court entered default orders[1] against Relue and Carter before removal to the district court. He further contends that the district court erred by dismissing his claims because 38 U.S.C. § 7316(f) abrogates the FTCA's intentional tort exception, meaning that his claims could go forward. After careful consideration, we affirm both the district court's denial of the motion to remand and its grant of the motion to dismiss.

---

[1] Knezevich characterized the default orders entered by the state court as default judgments, but at the time the case was removed, the court had yet to enter default judgment against either Carter or Relue. Accordingly, we refer to the default orders as such, despite Knezevich's characterization.

2

## I.    BACKGROUND

### A.    Factual Background

Knezevich is a former marine who receives veterans' benefits, including medical benefits.[2]  On January 31, 2018, he arrived at a veterans' hospital's dermatology clinic for a scheduled outpatient surgical procedure to excise an area of the skin on his chest to determine whether a previously diagnosed and removed cancer had metastasized.  He initially met with Relue, who is a registered nurse; she escorted him into an outpatient surgical procedure room and began to take his vitals.

While in the room, Knezevich asked questions about the qualifications of Carter, who would be performing the procedure; the procedure to be performed; and whether Carter could remove a skin tag located on his cheek.  Relue informed him that a cosmetic procedure like the removal of the skin tag would violate United States Veteran Affairs ("VA") policy.  Knezevich asked that Relue mention the request to Carter.

When Carter arrived to discuss the scheduled surgical procedure, they discussed the type of incision that he planned to use and Knezevich's skin tag removal request.  Knezevich initially disagreed with the type of incision but

---

[2] We recite the facts as alleged in Knezevich's complaint, accepting the allegations as true and construing them in the light most favorable to him.  *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

eventually consented to Carter's preference. Carter than drew the outline of the planned incision on Knezevich's chest. When the conversation moved to removal of the skin tag, Relue sought to interrupt the discussion; Knezevich told her that he was talking to Carter and not her. Carter responded that Knezevich should not be disrespectful. Knezevich replied that he did not intend any disrespect, but the decision about the skin tag was within Carter's discretion only, not Relue's.

Carter then informed Knezevich that he would not remove the skin tag "because [he didn't] want to." Doc. 2 ¶ 32.[3] Knezevich responded, "I guess you're one of those VA doctors that do the least amount of work possible." *Id.* ¶ 33. Carter then stood up and walked out of the examination room, shouting, "Someone call the police, I'm being threatened." *Id.* ¶ 34. Relue followed. Relue returned with a police officer and another doctor. They led Knezevich to another room, where he was able to reschedule the outpatient surgical procedure Carter had walked out on.

The police officer then escorted Knezevich out of the building and informed him that Carter and Relue had both accused him of threatening them, which Knezevich denied. The police officer then drove Knezevich to the main VA hospital for a voluntary "emotional state" evaluation. *Id.* ¶ 41-45. Knezevich spoke with a psychiatrist and a psychologist about the incident with Carter and

---

[3] "Doc. #" refers to the numbered entry on the district court's docket.

Relue, as well as Knezevich's fear that his cancer had returned and a delay in his treatment could be fatal. The psychiatric staff released him shortly thereafter. Approximately two weeks later, another doctor at the dermatology clinic performed the outpatient surgical procedure, using Knezevich's preferred surgical incision and removing several skin tags.

## B.    Procedural Background

Before bringing this action, Knezevich filed an administrative claim under the FTCA with the VA, asserting claims of defamation, intentional infliction of severe emotional distress, intentional breach of fiduciary duty, and tortious interference with a contract or business relations. After an internal VA investigation found that Carter and Relue committed no negligence and acted within the scope of their employment, the VA denied Knezevich's administrative claim.

Knezevich then filed this action against Carter and Relue in the state court in Hillsborough County, Florida, asserting the same claims as he had in his administrative claim. The government timely removed the case to the United States District Court for the Middle District of Florida. Knezevich objected to removal, arguing that the defendants had failed to comply with the state court clerk's summons by failing to file an answer to the complaint and that, because the state court had entered default orders against them, the state court case was over.

He also filed a motion to remand, arguing that remand was warranted because the government had failed to file a timely copy of the notice of removal in state court. He further contended that the default orders the state court entered before the government filed its notice of removal in the state court mandated dismissal of the case even if removal was proper. The district court denied Knezevich's motion to remand.

The government then filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, arguing that (1) Knezevich's claims for defamation and tortious interference with contract or business relations did not fall within the United States' waiver of sovereign immunity under the FTCA, (2) Knezevich's claims for intentional infliction of severe emotional distress failed to identify any "outrageous conduct" or any intent related to the incident in question; and (3) Knezevich's claims for intentional breach of fiduciary duty failed to identify any fiduciary duty breached during the incident in question. The government also argued that Knezevich's claims for tortious interference with contract or business relations could alternatively be dismissed because Knezevich failed to identify a business relationship or contract between himself and an identifiable third party.

The district court granted the motion to dismiss, adopting the magistrate judge's report and recommendation to dismiss Knezevich's intentional infliction of

6

emotional distress and breach of fiduciary duty claims for failure to state a claim and his defamation and tortious interference with contract or business relations claims for lack of subject matter jurisdiction.  This appeal followed.

## II.    STANDARD OF REVIEW

This Court reviews *de novo* a district court's order granting a motion to dismiss for lack of subject matter jurisdiction and its interpretation and application of statutory provisions.  *Chaney v. Tenn. Valley Auth.*, 264 F.3d 1325, 1326 (11th Cir. 2001).  In pursuing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a movant may challenge subject matter jurisdiction either facially or factually.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  When considering a facial attack on subject matter jurisdiction, as we do here, courts take the allegations in the complaint as true in determining whether the plaintiff sufficiently alleged a basis for subject matter jurisdiction.  *Id.* at 1529.

This Court similarly reviews *de novo* the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).  To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*

7

*v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

We also review the district court's denial of a motion to remand *de novo*. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir. 2002).

### III.    DISCUSSION

**A.    Motion to Remand**

Knezevich argues that the district court should have granted his motion to remand because (1) the Attorney General's certification that Carter and Relue were acting within the scope of their employment was incorrect, (2) the government did not comply with removal rules, and (3) the state court entered default orders against Relue and Carter before the case was removed to federal court.  As detailed below, these arguments are without merit, and the district court correctly denied the motion to remand.

In his first argument, Knezevich contends that the district court should not have accepted the Attorney General's certification that Relue and Carter were acting within the scope of their employment because their intentional torts did not

8

fall within the scope of their employment. We disagree. Under the FTCA, upon certification by the Attorney General that the defendant-employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, a civil action initiated in state court shall be removed without bond at any time before trial by the Attorney General to the district court for the district in which the action is pending. 28 U.S.C. § 2679(d)(2). Under this statute, "the Attorney General's certification is conclusive for purposes of removal, *i.e.*, once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and *the court may not remand the suit to the state court*." *Osborn v. Haley*, 549 U.S. 225, 231 (2007) (emphasis added); *see* 28 U.S.C. § 2679(d)(2). Therefore, because removal had been effected and the Attorney General's certificate had been submitted before Knezevich filed his motion to remand, no avenue existed for remand. Thus, the district court did not err in denying Knezevich's motion.

We next address Knezevich's second argument that Carter and Relue did not comply with the removal procedures set forth in § 1446(d) because the government failed to promptly file the notice of removal in state court. A defendant may remove a civil action from a state court by filing a notice of removal in the district court within 30 days of receipt of a copy of the initial pleading. *See* 28 U.S.C. § 1446(b). Knezevich does not dispute that the government timely filed the notice

of removal in the district court.  "*Promptly* after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."  *Id.* § 1446(d) (emphasis added).  The statute sets forth no mandatory time period for this filing in the state court.

The government admitted that it inadvertently failed to file a copy of the notice of removal in the state court until nearly a month after it had filed the notice in federal court.  Even if the state court filing was not "prompt[]" pursuant to § 1446(d), Knezevich conceded that he received a copy of the notice six days after the government initially filed it in the district court, which means that the government satisfied § 1446(d)'s requirement of prompt notice to the "adverse part[y]."  *Id.*  What's more, we have previously held that "failure of notice to the state court is a procedural defect that does not defeat federal jurisdiction." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997); *see also Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) (noting that remand may be granted only within the express directive of § 1447(c) that the case was removed "improvidently and without jurisdiction").  Accordingly, because the government's failure to promptly file the notice in the state court was

10

at best a procedural defect in the case's removal, the district court had jurisdiction over the action and could not remand it back to the state court.[4]

Knezevich's third argument is that, because the state court entered default orders against Relue and Carter, even if remand was proper, the district court should have taken the case as it was when it was removed, meaning that the case was essentially over. This argument lacks merit. Although the state court clerk had entered default orders against Carter and Relue, the state court had yet to enter default judgments. A hearing on whether default judgments should be entered against Relue and Carter was pending when the government filed the notice of removal. Thus, the state court lost jurisdiction of the case before final judgment was entered. Even assuming we were inclined to accept Knezevich's argument that the district court should have taken the case as it stood when removed, no final judgments had been entered. And a district court may set aside an entry of default for good cause. *See* Fed. R. Civ. Pro. 55(c); *Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962) ("Where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of . . . securing a trial upon

---

[4] The government argues that even if its delay in filing the notice of removal in the state court did not comply with § 1446, because it complied with the requirements of 28 U.S.C. § 2679(d)(2), the case was properly before the federal court. Knezevich responds that 28 U.S.C. § 2679(d)(2)'s certification provisions do not abrogate § 1446's requirement for a prompt notice to be filed in state court, and the case should have been remanded. Because the government's delayed filing amounted to a procedural defect that did not affect the federal court's jurisdiction, we need not address these arguments.

11

the merits).[5]  In addition, because the Attorney General certified that Carter and Relue were acting within the scope of their employment, the government—not Carter and Relue—was the proper defendant in the case, and no default had been entered against it.  For all these reasons, the case was still pending upon removal.

## B.    Motion to Dismiss

The district court dismissed Knezevich's defamation and tortious interference with contract or business relations claims for lack of subject matter jurisdiction and his intentional infliction of emotional distress and breach of fiduciary duty claims for failure to state a claim.  Knezevich's appeal does not mention his tortious interference with contract claim; we therefore deem it abandoned.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

### 1.    Lack of Subject Matter Jurisdiction

Sovereign immunity protects the federal government and its agencies from civil liability.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  The FTCA, however, provides a limited waiver of sovereign immunity for tort claims.  *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013).  The Act confers on federal district courts exclusive jurisdiction to hear claims against the

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The limited waiver of sovereign immunity is strictly construed in favor of the United States. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491 (2006).

The FTCA makes the United States liable to the same extent as a private individual under similar circumstances under the law of the place where the tort occurred, subject to enumerated exceptions to the immunity waiver. *Levin v. United States*, 568 U.S. 503, 506-07 (2013). The relevant exception in this case is 28 U.S.C. § 2680(h), which preserves the government's immunity from suit on "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander*, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h) (emphasis added). Section 2680(h) is known as the "intentional tort exception." *Levin*, 568 U.S. at 507.

Knezevich acknowledges that defamation is excluded from the FTCA's immunity waiver but contends that the district court erred in dismissing his claims because § 7316(f)—which makes the intentional tort exception inapplicable to any claim arising out of a negligent or wrongful act or omission by a VA healthcare employee in furnishing medical care or treatment while in the exercise of such

13

person's duties in or for the VA—abrogates the intentional tort exception in 28 U.S.C. § 2680(h).  In Knezevich's view, Carter and Relue's accusations that he threatened them were affirmative acts implicating § 7316(f), and their decision not to perform the scheduled surgery similarly was a relevant omission under that subsection.  He argues, therefore, that he was entitled to recover like the veteran in *Levin*.

There are material differences between the plaintiff in *Levin* and Knezevich. Levin sued the United States for medical battery for injuries he sustained as a result of a surgery.  *See Levin*, 568 U.S. at 518.  He thus suffered injuries while the VA was furnishing medical care or treatment.  In contrast, Knezevich's defamation claims did not arise from injuries from any medical treatment.  They arose from Carter's alleged statements before any medical procedure was performed. Knezevich contends that taking his vitals and drawing the shape of the incision on his chest brought Relue's and Carter's actions under the scope of *Levin*.  But those actions were not what allegedly caused Knezevich harm.

Section 7316 does not apply to Knezevich's claims.  Accusing a person of a crime does not implicate § 7316 because it is not related to giving medical care. *See* § 7316(f) ("The [intentional tort] exception . . . shall not apply to any claim arising out of a negligent or wrongful act or omission . . . *in furnishing medical care or treatment* (emphasis added)).  Further, the medical care that Relue and

14

Carter refused to give was furnished; he alleged no injuries that arose from the two-week delay.  Knezevich's § 7316 argument fails, and the district court correctly concluded that it had no jurisdiction over Knezevich's defamation claims.

## 2.    Failure to State a Claim

The district court dismissed Knezevich's claims of intentional infliction of emotional distress and breach of fiduciary duty for failure to state a claim.  On appeal, Knezevich argues that the dismissal was improper seemingly based on his erroneous belief that the district court dismissed these claims for lack of subject matter jurisdiction.  The government has not argued that this misunderstanding constitutes abandonment of these claims.  Rather, it argues that these claims were properly dismissed on the merits.  Whether we deem the claims abandoned or address them on the merits, Knezevich cannot prevail.

### a.    Intentional Infliction of Emotional Distress

Under Florida law,[6] the elements of intentional infliction of emotional distress are:  (1) the defendant's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a

---

[6] The substantive law of the state where the tortious act or omission occurred governs a claim brought under the FTCA.  *See Creekmore v. United States*, 905 F.2d 1508, 1510 (11th Cir. 1990).

civilized society; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004).

The issue of whether the activities of the defendant rise to the level of being extreme and outrageous is a legal question for the court to decide as a matter of law. *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990). Outrageous conduct occurs when:

> the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Paul v. Humana Med. Plan, Inc.*, 682 So. 2d 1119, 1121 (Fla. Dist. Ct. App. 1996).

Even accepting Knezevich's allegations as true and construing them in his favor, the complaint did not establish that Carter and Relue engaged in outrageous conduct or intended for their conduct to cause emotional distress. That Carter and Relue refused to treat Knezevich after Carter felt he was disrespectful is not "atrocious, and utterly intolerable in a civilized community." *See id.* While we accept as true Knezevich's allegations that he suffered emotional distress, Carter's and Relue's refusal to treat him that day did not rise to the required level of outrageous or extreme conduct under Florida law. *See id.* Knezevich also has not alleged that Carter's and Relue's rescheduling of his procedure was done with the

16

knowledge that it would cause him emotional distress. The district court therefore correctly dismissed Knezevich's intentional infliction of emotional distress claim.

### b.    Breach of Fiduciary Duty

Under Florida law, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty and (2) the breach of that duty such that it is the proximate cause of the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary relationship arises when "confidence is reposed by one party and trust accepted by the other." *Brigham v. Brigham*, 11 So. 3d 374, 387 (Fla. Dist. Ct. App. 2009).

In the context of the healthcare provider-patient relationship, breach of fiduciary duty claims usually arise from the healthcare provider's unauthorized disclosure of confidential information. *See*, *e.g.*, *id.*; *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 203 (Fla. 2007) (holding that an entity that negligently and unlawfully violates a patient's right of confidentiality and privacy in disclosing the results of HIV testing of a patient may be held responsible in a civil negligence action); *LeBlanc v. Acevedo*, 258 So. 3d 555, 557-58 (Fla. Dist. Ct. App. 2018) (holding that a patient was authorized to bring a claim for breach of fiduciary duty against doctor who released patient's medical records to his employer without authorization).

17

Assuming Knezevich and Carter had a fiduciary relationship as doctor and patient, Knezevich failed to show that Carter breached any duty to him.  Knezevich alleged no unauthorized disclosure of confidential information, and Carter and Relue's refusal to treat him on a particular day breached no duty.  Nor can Knezevich show any harm because his procedure was rescheduled for two weeks later, at which time another doctor preformed the previously scheduled procedure and removed multiple skin tags, as Knezevich had requested.  Thus, Knezevich's allegations fail to state a plausible breach of fiduciary duty claim and were properly dismissed.

In sum, the district court did not err in denying Knezevich's motion to remand or granting the government's motion to dismiss.  Once removal was effected by the filing of the removal notice in state court, the district court had no authority to remand the action after the government filed the Attorney General's certification, which conclusively established that the defendants were acting within the scope of their employment.  As to the motion to dismiss, the district court had no jurisdiction over Knezevich's defamation claims because defamation is expressly exempt from the limited waiver of sovereign immunity in the FTCA, and § 7316 does not apply to Knezevich's claims.  Further, Knezevich failed to plead sufficient facts to state plausible claims of intentional infliction of distress claim or breach of fiduciary duty.

18

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of

Knezevich's motion to remand and grant of the government's motion to dismiss.

**AFFIRMED**.